UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS WILLIAMS,

                Plaintiff,

v.

DELL BAKER, M. TRUXELL,
M. KIRKEY, J. PARSONS,

                Defendants.
_____/

Civil Action No. 24-12174

Thomas L. Ludington
United States District Judge

David R. Grand
United States Magistrate Judge

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT (ECF No. 22)

*Pro se* plaintiff Marcus Williams ("Williams"), an inmate of the Michigan Department of Corrections ("MDOC") at the Central Michigan Correctional Facility ("STF") at all relevant times, filed this civil rights action pursuant to 42 U.S.C. § 1983 against several MDOC employees. (ECF No. 1).[1] Williams names as defendants Dell Baker ("Baker"), M. Truxell ("Truxell"), M. Kirkey ("Kirkey"), and J. Parsons ("Parsons") (collectively, "Defendants"), all of whom worked at STF during the events giving rise to this suit. (ECF No. 1, PageID.2). Williams alleges retaliation in violation of his First Amendment rights, racial discrimination in violation of his equal protection rights under the Fourteenth Amendment, violation of his due process rights under the Fourteenth Amendment, and deliberate indifference to his serious medical needs in violation of his

---

[1] Williams initially filed his complaint on March 22, 2024, in the Western District of Michigan, and it was transferred to the Eastern District of Michigan on August 19, 2024. (*Id.*).

Eighth Amendment rights.

Now pending before the Court is a Motion to Dismiss and for Summary Judgment, which was filed by Defendants on June 24, 2025.  (ECF No. 22).  Williams filed a response on September 9, 2025 (ECF No. 32), and Defendants filed a reply on September 17, 2025. (ECF No.33).

The Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

## I.      RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss and for Summary Judgment **(ECF No. 22)** be **DENIED IN PART** as to Williams' Fourteenth Amendment equal protection claim against Baker and **GRANTED IN PART** as to all other claims.

## II.      REPORT

### A.      Factual Background

Williams' complaint arose when Baker fired him from his job working in the prison store.[2]  Williams alleges that while at work on May 19, 2023, he told Baker that he had a medical "call out."  (ECF No. 1, PageID.6).  Baker said "OK" and Williams left.  (*Id.*).  On May 22, 2025, Baker informed Williams that he "was terminated for going to [his] medical call out, without an itinerary."  (*Id.*, PageID.7).  On May 23, 2023, Williams filed a grievance, alleging that Baker had lied about the reason for his "fictitious termination."

---

[2] Williams appears to have been a "quartermaster," and Defendants note that he "had a QM detail (i.e., worked in the prison store)."  (ECF No. 1, PageID.7; ECF No. 22, PageID.63).

(*Id.*; ECF No. 22-4, PageID.128).  In response to the grievance, classification director Kirkey told Williams that "quartermaster hours were shortened to reflect no inmates working without staff present," and that Williams "was removed from [his] assignment to accommodate these changes."  (ECF No. 22-4, PageID.128).  He was also advised that he was "placed back in the quartermaster job pool and will be interviewed when a position becomes available."  (*Id.*).  But as of December of 2023, Williams was still without a job and Kirkey allegedly "provided another inmate [] with a quartermaster detail [] [that] had been open since November 17, 2023."  (ECF No. 1, PageID.10).

In addition to his May 23, 2023 grievance against Baker for the alleged wrongful termination, on May 24, 2023, Williams "wrote a grievance on the warehouse/quartermaster supervisor Truxell [for] allowing me to be wrongfully terminated due to racial discrimination."  (ECF No. 1, PageID.7-8, ECF No. 22-4, PageID.123).  In the grievance, Williams alleges that Truxell "look[ed] the other way when he knew I was being racially discriminated against and harassed."  (ECF No. 22-4, PageID.123).  He also alleges that Truxell "failed with his performance to correctly supervise his new employee (Dell) [Baker]."  (ECF No. 22-4, PageID.123).  During Inspector McCreery's interview of Williams to investigate this grievance, Williams alleged that Baker previously used the n-word in front of him and that Baker fired him for racial discrimination.  (ECF No. 22-4, PageID.124).

In response to the investigation of the grievance against Truxell, Truxell explained that Williams was fired because he would "just walk off the job without getting permission… was also found with homemade templates for making headbands and using

Quartermaster material to make them…[and] was directed to help unload a truck and Williams did not do as instructed." (ECF No. 22-4, PageID.124).

B.      **Standard of Review**

1.      *Motion to Dismiss*

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it

4

fails to comport sufficiently with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When a court is presented with a motion testing the sufficiency of a complaint, "it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). As set forth above, this includes consideration of a police report where it is central to the complaint. *See Desmond*, 2024 WL 3488735, at *1, n. 2.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead facts sufficient to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

### 2. Motion for Summary Judgment

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty.*

*Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander*, 576 F.3d at 558 (internal quotations omitted).

## C.     Analysis

In their motion, Defendants argue that Williams failed to properly exhaust certain of his claims such that they are entitled to summary judgment on those claims, and that he failed to plead sufficient facts in his complaint as to others such that those claims should

6

be dismissed pursuant to Rule 12(b)(6).

### 1. Defendant's Summary Judgment Exhaustion Arguments

#### a. The PLRA's Exhaustion Requirement

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not bring an action, "under [§ 1983] or any other Federal law," with respect to prison conditions until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being hauled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

The PLRA attempts to eliminate unwarranted federal court interference with the administration of prisons and thus seeks to "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525 (2002). The PLRA also was intended to "reduce the quantity and improve the quality of prisoner suits[.]" *Id.* at 524. Thus, it is essential for a plaintiff to properly exhaust his administrative remedies before filing suit by filing a

grievance that complies with the prison grievance system's requirements regarding the allegations made in his complaint.

An untimely or otherwise improperly filed grievance, even though appealed through all steps of a grievance procedure, does not fulfill the exhaustion requirement of 42 U.S.C. § 1997e(a).  *See Northington v. Abdellatif*, No. 16-12931, 2019 WL 9406499, at *7 (E.D. Mich. Aug. 16, 2019) ("The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural rules such as time limits for filing grievances and other critical procedural rules.").   Permitting an untimely or otherwise improperly filed grievance, even though appealed through all steps, to satisfy § 1997e(a)'s requirement "would permit a prisoner to bypass deliberately and flagrantly administrative review without any risk of sanction." *Woodford*, 548 U.S. at 97. The *Woodford* court explained:

> A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction…. For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id.* at 95.  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

8

### b.   The MDOC's Exhaustion Procedures

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Id.* at 200.   In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (ECF No. 22-2).   A state prisoner must first complete the process outlined in the Policy – including, where applicable, pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶ C).

The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved within two days after becoming aware of the grievable issue, he has five business days to file a Step I grievance.  (*Id.* at ¶ W).   After receipt of the grievance, the grievance coordinator must determine if the grievance should be rejected pursuant to the Policy.  (*Id.* at ¶ Y).   If the grievance is rejected, the grievance response shall state the reason for the rejection without addressing the merits of the grievance.  (*Id.*).   If the prisoner is dissatisfied with the Step I response, he may submit the grievance appeal to the Step II grievance coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due.  (*Id.* at ¶ JJ).   After receipt of the grievance, the grievance coordinator must determine if the grievance should be rejected pursuant to the Policy; if so, the grievance response shall state the reason for the rejection without addressing the merits of the grievance.  (*Id.* at ¶ EE). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten

9

business days within which to file a final appeal at Step III.  (*Id*. at ¶ HH).  Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps.

### c.      *Analysis of Williams' Exhausted and Unexhausted Claims*

Williams identifies three grievances as relevant to this lawsuit – STF-519, STF-534, STF-1266.  In support of their motion, Defendants provide Williams' "MDOC Prisoner Step III Grievance Report," which shows that, prior to filing his complaint in this case, Williams pursued those three grievances through all three steps of the grievance procedure. (ECF No. 22-4, PageID.110).  These grievances are summarized below:

| Grievance No. | Defendant(s) Grieved | Issues Grieved at Step I | Grievance Results |
|---|---|---|---|
| STF-519 (ECF No. 22-4. PageID.125-29) | Baker | Baker wrongfully terminated Williams from his "job detail for going to my medical call out from work…" even though "I had informed [Baker] that I had a call-out as I was walking to the exit. He responded with 'OK' as I was leaving."  (ECF No.22-4, PageID.128). | Denied at Steps I, II, and III |
| STF-534 (ECF No. 22-4, PageID.120-24) | Truxell | Truxell "looked the other way, when he knew I was being racially discriminated against and harassed." Truxell "assisted [Baker] with actions that made it seem as encouragement, for the racial bias conduct of (PD 02.03.109) harassment, dereliction of duty and cruel and unusual punishment." (ECF No. 22-4, PageID.123). | Denied at Steps I, II, and III |
| STF-1266 (ECF No. | None | "Administration has retaliated [] | Denied at |

| 22-4, PageID.112-19) | | against me for engaging in a protected activity."  Williams was told that "once a position has become available in the quartermaster area he will get that position," but "5 positions have become available in the quartermaster area" and administration is "refusing to hire me."  (ECF No. 22-4, PageID.115). | Steps I, II, and III |
|---|---|---|---|

In their motion, Defendants concede that Williams exhausted the "failure-to-supervise claim against QMS Truxell and the false-termination claim against QM Baker" asserted in STF-534 and STF-519, respectively.  (ECF No. 22, PageID.83).  Defendants argue, however, that the following claims are unexhausted: (1) racial discrimination claim against Baker; and (2) any claim against Kirkey or Parsons, as they were not named in any grievance.  (ECF No. 22, PageID.83-84).

### i.      *Racial Discrimination Claim Against Baker*

In his complaint, Williams asserts a race discrimination claim against Baker, alleging that there was "no just cause in my termination, only lies with racial discrimination."  (ECF No. 1, PageID.20).  As evidence for Baker's alleged race-based motivation, Williams asserts that Baker used the n-word in front of him just two weeks *before* his termination.  (ECF No.1, PageID.6) ("[H]e looked directly at me and Lowe (the only two African Americans) and said 'you [n-words] need to get a job'").  In order to proceed with his race discrimination claim against Baker, Williams must show that he properly exhausted that claim.  While Defendants concede that STF-519 – which deals with Williams' alleged improper firing – is fully exhausted, they argue that STF-519 did not properly exhaust Williams' *race discrimination claim* because the Step I grievance does

11

not allege that racial discrimination was the cause of the termination.  (ECF No. 22, PageID.85).

The Court agrees that none of Williams' Step I grievances, on their own, exhaust his racial discrimination claim against Baker.  The only grievance filed against Baker was STF-519[3], and at Step I of that grievance Williams did not mention race discrimination.  Rather he merely alleged that Baker made a "fictitious termination" because he knew Williams left work for an approved "medical call out." (ECF No. 22-4, PageID.128).  But as discussed below, because Williams specifically raised the issue of race discrimination at Step II of his grievance against Baker and the MDOC continued to address the grievance on its merits, Baker's exhaustion argument fails.

Generally, an inmate "cannot raise a new issue in a grievance appeal and have it be deemed exhausted," but there is an exception when "the MDOC proceed[s] to address that new claim on the merits."  *Dykes v. Fuller*, No. 19-2243, 2020 WL 6257023, at *3 (6th Cir. July 10, 2020).  However, when prison officials consider a grievance on the merits despite a procedural defect, that "procedural defect will not preclude the prisoner from filing a federal lawsuit." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010).

---

[3] The other two grievances clearly do not exhaust a racial discrimination claim against Baker. First, in STF-534, Williams does mention Baker's alleged racial discrimination, but only in the context of accusing *Truxell* of failing to properly supervise Baker. (ECF No. 22-4, PageID.123). Thus, this grievance would not put a reviewing officer on notice that Williams intended this grievance to charge *Baker* with racial discrimination.  The third grievance, STF-1266, does not mention Baker or relate to Williams' termination itself. (ECF No. 22-4, PageID.115).  Rather, in this grievance, Wiliams challenges the fact that he had not received a new job despite being told he would get one once a position became available. (*Id.*).  Moreover, Williams asserts in this grievance that the refusal to give him a new job is the product of "retaliation," not race discrimination. (*Id.*).  Accordingly, this grievance, too, does not exhaust a race discrimination claim against Baker.

As noted, at Step I of grievance STF-519, Williams says nothing about racial discrimination, and instead simply accuses Baker of a "fictitious termination" because he terminated Williams despite knowing that Williams had left work for a medical call out. (ECF No. 22-4, PageID.128).  In his Step I response to STF-519, Kirkey explained that "quartermaster hours were shortened to reflect inmates working without staff present," and that Williams "was removed from assignment to accommodate these changes."  (*Id.*).

In his Step II grievance appeal, Williams specifically alleges that Baker's termination was motivated by racial discrimination.  (ECF No. 22-4, PageID.126) ("These facts will prove … he is also racially discriminating…" and "…this employee is falsifying [the termination ]documents and racially discriminating against me….").  This gave the grievance reviewer fair notice that Williams was complaining about race discrimination by Baker in connection with his termination.  However, despite the fact that Williams added race discrimination as a reason for Baker's challenged actions, Warden G. Miniard reviewed the Step II grievance on its merits, explaining that "[f]urther investigation concluded grievant's concerns were addressed at the Step I level.  No additional relevant information was provided with the Step II appeal."  (*Id.*, PageID.127).

Because Warden Miniard chose to address the Step II grievance on its merits rather than rejecting it for adding the race discrimination element, Baker cannot rely on Williams' failure to mention race discrimination at Step I as a basis for asserting that his race discrimination claim is unexhausted.  *See e.g.*, *McNees v. Torrey*, No. 1:19-CV-121, 2020 WL 1990962 (W.D. Mich. Feb. 28, 2020), report and recommendation adopted, No. 1:19-CV-121, 2020 WL 1986486 (W.D. Mich. Apr. 27, 2020) (rejecting exhaustion argument

13

where "[e]ven if Plaintiff's claim in his Step II appeal is considered a new issue, the Step II grievance was considered on the merits and not rejected as procedurally barred for adding a new issue."); *Peterson v. Corby*, No. 23-10090, 2023 WL 7367494, at *3 (E.D. Mich. Oct. 2, 2023), report and recommendation adopted, No. 23-10090, 2023 WL 7345871 (E.D. Mich. Nov. 7, 2023) (rejecting exhaustion argument where, "rather than rejecting that new issue [raised at Step III] on procedural grounds, the MDOC decided the entire grievance on the merits.") (citing *Reed-Bey*, 603 F.3d at 325).   Consequently, Baker's summary judgment motion based on exhaustion should be denied as to Williams' race discrimination claim against him.

### ii.      First Amendment Retaliation Claim against Baker

Baker makes the same failure to exhaust argument as to Williams' First Amendment retaliation claim as he does as to Williams' race discrimination claim.  (ECF No. 22, PageID.85) ("To be clear, at no point in STF-519 did Williams allege that QM Baker terminated him for retaliatory reasons or on the basis of his race.").  This time, however, the analysis favors Baker.

As discussed above, Williams' Step I STF-519 grievance alleges only that Baker made a "fictitious termination" because he knew that Williams left work for an approved "medical call out."   (ECF No. 22-4, PageID.128).   It does not allege that Baker's termination of him was the product of "race discrimination" or "retaliation."[4]  (*Id.*).  And,

---

[4] The Court notes that Williams did assert in his Step I grievance that "being placed on the transportation list due to this situation [] will be a violation of retaliation." (*Id.*).  However, that statement was future-looking, and clearly not an allegation that Baker terminated his work assignment as retaliation.

whereas Williams specifically alleged at Step II that Baker's firing of him was due to "racial discrimination," that Step II grievance made no mention of retaliation.  (ECF No. 22-4, PageID.126).  Nor did Williams raise retaliation at Step III.  (*Id.*).

Because Williams did not allege during the grievance process that Baker's decision to terminate him was retaliatory, Williams' First Amendment retaliation claim against Baker is not properly exhausted, and Baker is entitled to summary judgment as to that claim.  *Woodford*, 548 U.S. at 93.

### iii.      *Claims against Kirkey and Parsons*

The MDOC's grievance Policy provides that a Step I grievance must include the name of each individual associated with the issue being grieved.  (ECF No. 22-2 at ¶ S) ("Dates, times, places, and *names of all those involved in the issue being grieved are to be included.*") (emphasis added).  Case law makes clear that because only Truxell and Baker were named at Step I in any of the grievances, Williams cannot rely on the grievance to exhaust claims against other defendants, namely, Kirkey and Parsons.  *See Vandiver*, 48 F. App'x at 519 ("The issues [a plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance."); *Reed-Bey*, 603 F.3d at 324 ("Under the [MDOC's] procedural rules, inmates must include the … names of all those involved in the issue being grieved *in their initial grievance.*") (internal quotations omitted) (emphasis added); *Clark v. Frontera*, No. 2:06-cv-40, 2008 WL 3833407, at *3 (W.D. Mich. Aug. 13, 2008) ("A prisoner must specifically mention the involved parties in the grievance ….") (citing cases); *Pasley v. Maderi*, No. 13-13251, 2014 WL 5386914, at *4 (E.D. Mich. Sept. 15, 2014) (recognizing

that the Policy requires the names "of all those involved in the issue being grieved" to be included in the Step I grievance and dismissing those defendants who were not so named) (internal quotations omitted).

Not one of the three grievances relevant to this lawsuit identify Kirkey or Parsons. STF-519 clearly identifies Baker, and STF-534 clearly identifies Truxell, as the subjects of the respective grievances. (ECF No. 22-4, PageID.123, 128). Thus, those grievances do not exhaust any claims against Kirkey or Parsons.

In grievance STF-1266, Williams does not name anyone in particular, but instead asserts that he is grieving "administration." (ECF No. 22-4, PageID.115) ("Administration has retaliated [] against me . . . Administration is failing and refusing to hire me."). "A Step I grievance that does not specifically identify the individuals associated with the grievance issue is [] procedurally defective." *Bickham v. Vanderschaegen*, No. 2:22-cv-182, 2024 WL 3541545, at *5 (W.D. Mich. June 25, 2024). While it is true that "[i]f that procedural defect is clear from the face of the grievance, but prison officials nevertheless consider the grievance on its merits, the procedural defect will not preclude the prisoner from filing a federal lawsuit," *id.* (quoting *Reed-Bey*, 603 F.3d at 324-25), in this case, the Step I grievance was not considered on its merits. Rather, Kirkey, as the reviewing officer, determined that the grievance could not be addressed on its merits, precisely because Williams refused to identify anyone to whom he was directing the grievance. (ECF No. 22-4, PageID.115). Indeed, Kirkey explained this problem in response to the grievance at Step I, writing "Inmate Williams stated this grievance was adding to a civil law [sic] that he has against the MDOC about this matter. He would not discuss a resolution or specifics

16

due to the pending lawsuit." (*Id.*).  Thus, Kirkey recognized the grievance was too vague

to address and attempted to get more information from Williams.  Williams' refusal to

provide the information needed to address his grievance conflicts with the PLRA's goal to

resolve issues before they reach the courts.[5]  *Reed-Bey*, 603 F.3d at 324 ("The point of the

PLRA exhaustion requirement is to allow prison officials 'a fair opportunity' to address

grievances on the merits, to correct prison errors that can and should be corrected and to

create an administrative record for those disputes that eventually end up in court.").  Since

Williams refused to provide additional information, Kirkey did not have the opportunity to

address the issue on its merits.  Thus, the grievance was not considered on its merits and

does not exhaust a claim against Kirkey or Parsons.  Accordingly, the Defendants'

summary judgment motion should be granted as to Kirkey and Parsons.

### 2.       *Defendants' Motion to Dismiss Arguments*

Defendants' limited their exhaustion arguments to the ones discussed above.

---

[5] Even if Williams did not know Kirkey's or Parson's identity before filing STF-1266, but still wanted to challenge their conduct, he could have identified them by position, job title, or other information detailed enough to enable the grievance reviewer to understand whose conduct the inmate was challenging. *See Savoie*, 731 F. Supp. 3d at 872 ("Courts in this circuit have repeatedly held that a grievance that does not 'identify a prison official by name' must at least include 'other information identifying the official, such as the official's title or position or even the facts set forth in the grievance.'").  But here, Williams refused to supply any such information.  Moreover, there is evidence suggesting Williams knew Kirkey's identity at the time he wrote the grievance.  In June of 2023, in response to Williams' earlier grievance against Baker (STF-519), Kirkey told Williams that he would be "placed back in the quartermaster job pool . . ." (ECF No. 22-4, PageID.128).  And in response to Defendants' summary judgment motion, Williams explains that Kirkey's failure to place him in a job after telling him that he "would be placed back in the job pool and get a position when one becomes available," is why he "placed a grievance (STF 23-12-1266-02D…) describing the officials [sic] alleged wrongdoing."  (ECF No. 32, PageID.179).  Williams didn't file STF-1266 until December 27, 2023, and thus could have named Kirkey as a target of that grievance at that time.  (ECF No. 22-4, PageID.115).

Accordingly, as to the claims that remain, the Court turns to Defendants' motion to dismiss arguments.

### a.      Equal Protection Claim against Baker

Baker argues that Williams "does not state an equal-protection claim" against him for two reasons.  First, he argues that Williams' "allegations of disparate treatment are cursory and conclusory, and he does not identify any similarly situated individuals that were treated differently on account of race."  (ECF No. 22, PageID.72).  Second, Baker argues that because "Williams does not have a fundamental right to a prison job, the deprivation of his job cannot support an equal-protection claim."  (*Id.*).  These arguments, which the Court will address in reverse order, lack merit.

It is true that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment's Due Process Clause.  *Perry v. Horton*, No. 2:18-cv-200, 2019 WL 311796, at *6 (W.D. Mich. Jan. 24, 2019) (citing, *e.g., Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001)).  Nor do they have a protected property right to a particular job.  *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003).  However, "[p]risoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race."  *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)).  "[G]enerally, despite the lack of a constitutional right to specific jobs or training, the Equal Protection Clause prohibits prison officials from making assignments based on race."  *Robinson v. Michigan Dep't of Corr. Med. Health Providers*, No. 19-10584, 2019 WL 2059120, at *8 (E.D. Mich. May 8, 2019) (citations omitted).  Thus, the mere fact that Williams had no

18

constitutional right to his prison job does not necessarily doom his equal protection claim.

Turning to the sufficiency of Williams' allegations, the Court finds that Baker is not entitled to dismissal of the equal protection claim.  The Sixth Circuit has held that a prisoner attempting to state a discrimination claim "need[s] only to allege sufficient facts to show 'that a state actor intentionally discriminated against [him] because of membership in a protected class.'"  *Brand v. Motley*, 526 F.3d 921, 924) (6th Cir. 2008).  Here, Williams alleges that days before his firing, Baker "looked directly at me and [another inmate] and said 'you [n-words] need to get a job."  (ECF No. 1, PageID.6).  Williams alleges that Baker admitted to using the n-word, which appears to be corroborated by the grievance records.  (*Id.*, PageID.9, 11; ECF No. 22-4, PageID.124) ("the use of the 'N' word is being handled Administratively.").  Moreover, Williams alleges that he was given conflicting reasons for his termination.  (ECF No. 1, PageID.9, 11).  And, Williams alleges that despite Baker knowing he had done nothing wrong, wrote on a report, "I will not take Williams back . . ."  (*Id.*).  Taken together, Baker's racially-hostile comment, made directly to Williams regarding work matters, and the other allegations in Williams' complaint, allow for a reasonable inference that Baker's decision to terminate Williams was motivated by his race.

As to Baker's argument that Williams failed to "identify any similarly situated individuals that were treated differently on account of race," (ECF No. 22, PageID.72), in his response brief, Williams identified two such Caucasian inmates by last name and prisoner number.  (ECF No. 32, PageID.173-74).  In his reply brief,  Baker suggests Williams was required to go a step further and "allege how the comparative white prisoners

19

were similar to him in all relevant respects." (ECF No. 33, PageID.193). However, Baker fails to specify what "relevant respects" there are for a prisoner quartermaster position, and Williams' allegations are sufficient for the Court to reasonably infer a contention that the identified prisoners were "similarly situated" in their abilities to perform the work of that position.

For all of these reasons, Baker's motion to dismiss Williams' equal protection claim should be denied.

### b.      *Fourteenth Amendment Due Process Claim against Baker*

Although it's unclear from the organization of the complaint, Williams' allegations against Baker for wrongfully terminating him from his job detail can liberally be construed as a Fourteenth Amendment procedural due process claim.[6] Defendants argue that Williams cannot state a procedural due process claim because his prison job is not an interest protected by the Due Process Clause. The Court agrees.

To state a claim for violation of due process under the Fourteenth Amendment, a plaintiff must establish three elements: "(1) that [he] had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) that [he] was deprived of that protected interest within the meaning of the due process clause; and (3)

---

[6] Much of Williams' procedural due process argument relates to allegations against Kirkey and Parsons, for failing to reinstate him in his job and for not responding to his grievances as he would have liked. (*E.g.*, ECF No. 1, PageID.18) ("By presenting improper measures in order to violate my constitution [sic] rights of due process… By not following the task of a classification director on policy, regulation, procedures, administrative rules… By refusing to follow up with the due process of a complaint…") But as discussed above, *supra* at 14-16, Williams did not properly exhaust his claims against Kirkey and Parsons. Therefore, only due process claims against Baker are discussed, although the rationale would apply to Kirkey and Parsons, as well.

that the state did not afford [him] adequate procedural rights before depriving [him] of [his] protected interest." *Wedgewood Ltd. P'ship I v. Twp. Of Liberty, Ohio,* 610 F.3d 340, 349 (6th Cir. 2010). Williams' Fourteenth Amendment procedural due process claim fails because a prison job is not protected by the Due Process Clause. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("It is well established, however, that no prisoner has a constitutional right to a particular job or to any job."); *Howard v. Mgmt. & Training Corp.*, No. 13-3443, 2014 WL 12971771, at *2 (6th Cir. Nov. 14, 2014) (holding that plaintiff "did not have a liberty or property interest in his prison job as a legal aide/clerk."). Since Williams was not deprived of a "life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment," this claim should be dismissed.

### c. *Eighth Amendment Claim against Baker*

Williams also plausibly frames Baker's alleged wrongful termination as a violation of his Eighth Amendment rights against cruel and unusual punishment, but his termination from his prison job does not rise to the level of "cruel and unusual punishment."

The Eighth Amendment prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey*, 832 F.2d at 954. Courts have held that an inmate has suffered cruel and unusual punishment when they have been denied a "necessity of civilized human existence," *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004), including "deprivations of essential food, medical care, or sanitation" and "other conditions intolerable for prison confinement." *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981). Courts have found that "[w]hile unpleasant, there is nothing 'cruel' or 'unusual' about unjustified terminations from prison jobs." *Newman v. Michigan Dep't of Corr.,* No.

2:19-CV-11751, 2023 WL 3432182, at *6 (E.D. Mich. Feb. 17, 2023), report and recommendation adopted sub nom. *Newman v. Hissong,* No. 219-CV-11751, 2023 WL 2731864 (E.D. Mich. Mar. 31, 2023) ("[T]ermination from a prison job—even for possibly bogus reasons—does not rise to the level of an Eighth Amendment violation."); *Smith v. Sapp*, 156 F.3d 1232 (6th Cir. 1998) ("[F]orcing an inmate to live without such privileges as… a job does not constitute the infliction of serious pain necessary to state an Eighth Amendment claim.").

Accordingly, Williams' Eighth Amendment claim should be dismissed.

### d.    *Williams Has Not Established Truxell's Personal Involvement*

Defendants argue that Williams' claims against Truxell should be dismissed because Truxell cannot be liable for failing to supervise his subordinates.  (ECF No. 22, PageID.70).  The Court agrees.

In order to demonstrate liability under § 1983 as to any particular defendant, a plaintiff must first establish that that defendant acted under color of state law and that his actions violated rights secured by the Constitution and/or laws of the United States.  *See Baker v. McCollan*, 443 U.S. 137, 140 (1979).  The plaintiff also must make a clear showing that each defendant was personally involved in the activity that forms the basis of the complaint.  *See Rizzo v. Goode*, 423 U.S. 362, 377 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Moreover, § 1983 liability cannot be premised upon mere allegations of *respondeat superior*, *i.e.*, supervisory liability; rather, a defendant can only be liable under § 1983 if the plaintiff shows that he personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct.

22

*See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Bellamy*, 729 F.2d at 421.  A supervisory official's mere awareness of a complaint of allegedly illegal conduct, and his subsequent failure to take corrective action, is insufficient to trigger § 1983 liability.  *See Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988).  Rather, liability under § 1983 must be based upon active unconstitutional behavior, not a "mere failure to act."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

In this case, Williams does not allege facts in support of his claim that Truxell encouraged or was directly involved in any unconstitutional action.  Williams' exhausted claims against Truxell stem from STF-534, in which he writes that Truxell violated his rights "[b]y looking the other way when he knew I was being racially discriminated against and harassed.  Instead he assisted [Baker] with actions that made it seem as encouragement, for the racial bias conduct of (PD 02/03/109) harassment… and cruel and unusual punishment."  (ECF No. 22-4, PageID.123).  Although Williams' grievance states that Truxell "assisted" Baker in the racial discriminatory conduct with "actions that made it seem as encouragement," (*id.*), these allegations are wholly conclusory, and the allegations in his complaint belie any such claim.

Williams' complaint centers on three ways that Truxell allegedly failed to act.  The first group of allegations focus on Williams' alleged wrongful termination.  Williams alleges that Truxell "allow[ed] me to be wrongfully terminated due to racial discrimination (STF-23-05-0534-17E)."  (ECF No. 1, PageID.7-8).  He also alleges that Truxell "knew I never had a bad work report or misconduct, but still allowed the east quartermaster supervisor Baker to terminate me on the grounds of a lie" and that "Truxell allowed the

east quartermaster supervisor Baker to falsify a statement on state documents in order to terminate me." (*Id.*, PageID.12, 14).  The second group of allegations relate to Williams not getting another prison job after losing his quartermaster position.  In a series of allegations, Williams describes Truxell's knowledge of the "chronological" process for giving out prison jobs, that positions were open and available, but that other prisoners were given jobs rather than Williams.  (*Id.*, PageID.12, 14, 21).  Third, Williams alleges that Truxell didn't respond to Williams' grievances as he should have.  Williams alleges that "Truxell never followed up on the verbal complaint inmate Williams [] made on the east quartermaster supervisory Baker." (ECF No. 1, PageID.14).  Therefore, Williams argues, Truxell failed "to provide an adequate way in order to express complaints to and on subordinates…" and "to promulgate policies that will guide subordinates on who / what / how to deal with complaints about coworkers from inmates." (*Id.*, PageID.19).

None of the above allegations give rise to § 1983 liability against Truxell.  Although Williams alleges that Truxell was aware he was terminated for racially discriminatory reasons and that he was being improperly passed over for job opportunities, Williams does not allege that Truxell had any responsibility for those decisions, and his mere awareness of them does not constitute his "personal involvement" in them.  *Poe*, 853 F.2d at 429.

Nor does the "denial of administrative grievances or the failure to act" give rise to a claim under § 1983.  "[L]liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'"  *Shehee*, 199 F.3d at 300 (quoting *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir.1998).  As in *Shehee*, to the extent Williams' allegations against Truxell are based on the "denial of his

24

administrative grievances and [his] failure to remedy the alleged retaliatory behavior," those claims fail as a matter of law.  *Shehee*, 199 F. 3d at 300.

Finally, Williams does not allege any facts to support a claim that Truxell "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F. 3d at 300 (quoting *Hays v. Jefferson County, Ky*., 668 F.2d 869, 874 (6th Cir. 1982)); *Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"); *see also Twombly*, 550 U.S. at 570.

As to Williams' allegations of policy failures, he does not identify any actual policy at issue.  The policy to which Williams refers appears to be whatever policy it is that guided Truxell's actions, but as already stated, Truxell is not liable under § 1983 for his failure to act.  Moreover, the law is clear that violation of an internal prison policy does not give rise to § 1983 liability.  *Horn v. Washington*, No. 22-CV-11844, 2023 WL 9324823, at *1 (E.D. Mich. Oct. 3, 2023), report and recommendation adopted, No. 22-CV-11844, 2024 WL 220367 (E.D. Mich. Jan. 19, 2024) ("[V]iolations of a prison policy do not give rise to § 1983 liability."); *Ansari v. Jimenez*, 678 F. Supp. 3d 926, 933 (E.D. Mich. 2023) ("[a]llegations that a[n] official failed to follow an internal [ ] policy are not sufficient to support a constitutional claim.") (quoting *Black v. Parke*, 4 F.3d 442, 448 (6th Cir. 1993)).

For the foregoing reasons, Williams' claims against Truxell should be dismissed for failure to state a claim.

## III. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Defendants' Motion to

25

Dismiss or for Summary Judgment **(ECF No. 22)** be **DENIED IN PART** as to Williams' Fourteenth Amendment equal protection claim against Baker and **GRANTED IN PART** as to all other claims.

Dated: January 26, 2026                                  s/David R. Grand
Ann Arbor, Michigan                                      DAVID R. GRAND
                                                         United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 26, 2026.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
