UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS WILLIAMS,

                                                    Civil Action No.: 24-12174
                        Plaintiff,

                                                    Robert J. White
v.                                                  United States District Judge

DELL BAKER,                                         David R. Grand
                                                    United States Magistrate Judge

                        Defendant.
_____/

## ORDER TO GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY (ECF No. 49)

On March 22, 2024, *pro se* plaintiff Marcus Williams ("Williams"), an inmate of the

Michigan Department of Corrections ("MDOC"), filed this civil rights action pursuant to 42 U.S.C.

§ 1983 against several MDOC employees. (ECF No. 1).[1] Williams claimed racial discrimination

in violation of his equal protection rights under the Fourteenth Amendment, along with retaliation

in violation of his First Amendment rights, deliberate indifference to his serious medical concerns

in violation of his Eighth Amendment rights, and violation of his due process rights under the

Fourteenth Amendment. (*Id.*,PageID.2). In his initial complaint, Williams named as defendants

Dell Baker ("Baker"), M. Truxell ("Truxell"), M. Kirkey ("Kirkey"), and J. Parsons ("Parsons"),

collectively ("Defendants"), all of whom worked at the Central Michigan Correctional Facility

("STF") during the events outlined in Williams' civil rights action.

On February 20, 2026, Judge Robert J. White issued an Opinion and Order adopting the

undersigned's "Report and Recommendation to Grant in Part and Deny in Part Defendants' Motion

to Dismiss and for Summary Judgement." (ECF No. 40). As a result, Truxell, Kirky and Parsons

---

[1] Williams initially filed his complaint on March 22, 2024, in the Western District of Michigan, and the complaint was transferred to the Eastern District of Michigan on August 19, 2024. (ECF No. 1)

were all terminated as Defendants in the case, with Baker remaining as the sole defendant. (ECF No. 38). Furthermore, Williams' claims were all dismissed except for his Fourteenth Amendment equal protection claim against Baker. (*Id.*, PageID.244).

Now pending before the Court is a "Motion for Entry of an Order Compelling Discovery," filed by Williams on May 18, 2026. (ECF No. 49). Baker filed a response on June 2, 2026 (ECF No. 51). Williams filed a reply on June 23, 2026. (ECF No. 55).

The Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

**Factual Background**

Williams' complaint stems from when Baker terminated him from his job working in the prison store.[2] Williams alleges that while at work on May 19, 2023, he informed Baker that he had a medical "call out." (ECF No. 1). Williams claims Baker responded "OK" and Williams subsequently left. (*Id.*,PageID.6). On May 22, 2023, Baker allegedly informed Williams that he "was terminated for going to [his] medical call out, without an itinerary." (*Id.*,PageID.6). The following day, on May 23, 2023, Wiliams filed a grievance, claiming Baker had lied about the reason for his "fictious termination." (ECF No. 22-4, PageID.128). Furthermore, Williams told Inspector McCreery during an interview as part of the grievance investigation, that Baker had previously used the n-word in his presence and that Baker fired him for racial discrimination. (*Id.*,PageID.124),

On March 30, 2026, Williams served interrogatories and requests for production of documents on Baker, and Baker timely served his responses on Williams.  This motion followed.

---

[2] Williams appears to have been employed as a "quartermaster," and Baker noted that he "had a QM detail (i.e., worked in the prison store)." (ECF No. 1, PageID.7; ECF No. 22, PageID.63)

**Legal Standards**

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

**Analysis**

Williams takes issue with Baker's responses to Requests for Production ("RFP") and Interrogatory #'s 1-7, 9-12, and 14. (ECF No. 49, PageID.334-342). Below the Court will address each category of disputed discovery.

### a. Request for Production # 1 and Interrogatory #'s 10 and 12

Williams' RTP #1 asks Baker to "produce the documents of the operating procedure, policy directive and administrative rule for how Central Michigan Correctional facility quartermaster operates" as they were effective in May 2023. (ECF No. 49, PageID.344-45). Baker objects, arguing that "[Williams] is free to do his own research, and defendant is under no obligation to research, gather, or to produce information that [Baker] is able to access himself." (*Id.,* PageID.345). Although Williams asserted in his motion that he "can not look into the rules or policies of any other facility" (*id.,*

PageID.337),[3] in his reply, Williams states, "I have also found it to be true, that I am able to obtain operating procedures (OP) of another facility while I am at my current facility" (ECF No. 55, PageID.419). Based on this, Williams has not shown an inability to obtain the documents he seeks at his present prison.  Accordingly, the Court will not order any relief as to this request.

Williams' Interrogatory #10 asks Baker to "state the operating procedure in the east quartermaster, which is in effect during May 2023 at Central Michigan Corr. Fac. for keeping records of the events that happen in that area?" (ECF No. 49, PageID.350). Baker objects on the same grounds as RTP #1, and based on Williams' admission that he is able to access the desired information at his current facility, the Court will similarly not grant any relief as to this interrogatory.

Williams' RFP/interrogatory #12 asks Baker to "state the name and duties of-whom informed you that the hours in the [sic] east quartermaster had to change around in May 2023. Or produce the documents, electronically stored information and tangible things, in which you were [sic] informed [sic]." (ECF No. 49, PageID.351). Baker did not object to Williams' request, and responded, "Mark Truxell, former Warehouse Manager conveyed these instructions to Defendant at the direction of the Warden." (*Id.*). In his response brief, Baker asserts that this response "fully responded to RTP #12 and as such this motion to compel should be denied." (ECF No. 51, PageID.374).  The Court agrees.  In his reply, Williams argues "The defense again has half answered this question. Which is something that is needed to be known, for whom has informed the defendant about the changes of the

---

[3] The events at issue in this case occurred at Central Michigan Correctional Facility. However, Williams is currently incarcerated at Parnall Correctional Facility.

hours in the east quartermaster." (ECF No. 55, PageID.422). But Baker's response answered that question – he asserts it was "Mark Truxell" who informed him of the changes. No further response is required, as Williams made no showing that Baker has personal knowledge of Truxell's "duties."

### b.  Request to Produce #2

Williams' RTP #2 asks Baker to "produce all documents, even those electronically stored with references to the plaintiff in them. In regard [sic] to every employee of central Michigan correctional facility from the time of 5-14-23 to 6-14-24." (ECF No. 49, PageID.345). Baker objects to the request on the grounds that "This request seeks irrelevant information, and therefore constitutes an impermissible fishing expedition… Defendant is not in possession of documents that belong to other employees." (*Id.*, PageID.345-346).

The Court agrees with Baker's assertion that, at least for the most part, Williams' request constitutes an impermissible "fishing expedition," as the request asks Baker to produce documents possessed by others, and is not tailored to the events at issue in this case. Williams claims he needs the requested documents "to show the breadth of the conspiracy, the role that each defendant, executive played." (ECF No. 55, PageID.420). But Baker is the sole remaining defendant in this case, and the Court cannot compel him to produce documents not in his possession, custody, or control. Thus, to the extent this request seeks documents held by others, or documents in Baker's possession that "reference" Williams but which do not relate to the issues in this case, Williams is entitled to no relief. However, to the extent Baker possesses non-privileged documents which reference Williams *and* are related to the issues in this case, which have not already been produced, Williams' request is legitimate, and Baker shall produce any such documents to

Williams within **21 days**.

### c.   Interrogatory #3

Williams' Interrogatory #3 asks Baker to "provide information on how many details have you provided/accepted [sic] into the east quartermaster. From 5-1-23 to the present time. With their race, detail title, their pay rate, the assignment classification and dates." (ECF No. 49, PageID.346). Baker objects on the grounds that "Plaintiff is not allowed to possess information regarding information or records about Michigan Department of Corrections (MDOC) staff or other prisoners as it presents significant concerns. Additionally, Baker claims "it is wholly unclear what is being requested here and leaves Defendant to guess as to what it is [Williams] is looking for it presents significant security concerns." (*Id.*). In his reply brief, Williams disputes that providing him the requested information is a "security concern," and contends that the information "is also on the housing units conflict sheet" that inmates are able to see.  (ECF No. 55, PageID.420). Wiliams also cites to a "Callout Log" that defendants put into the record in this case as an exhibit to a prior motion to dismiss, asserting that the document is "proof that [Baker] did not try to answer my request appropriately."  (*Id.*) (citing ECF No. 22-4, PageID.119).

Having reviewed the parties' submissions and cited materials, the Court finds that Baker has not shown that the *specific* information requested by Williams in Interrogatory #3 poses a "security concern."  The Court does agree that the interrogatory could have been better written, but given the context in which it is submitted – regarding Williams' alleged race-based wrongful termination – the information he seeks is clear enough.  Accordingly, Baker shall answer the interrogatory by identifying the number of "east quartermaster" positions he hired subsequent to Williams' termination, along with the hires' race, hire

date, and assignment classification.[4]   The Court notes that, consistent with the interrogatory's specific request, the information may be provided in summary form.  Baker shall provide this information to Williams within **21 days**.

### d. Request to Produce #4

Williams' RTP #4 asks Baker to "produce all documents which holds information including notes, taken by inspector McCreery on the grievance (STF-23-05- 0534-17E) interviews, investigation, request for extension and kites I sent to administration with the responses to them." (ECF No.49, PageID.346-347). Baker objects on the grounds that "[Williams] is in a better position than Defendant to have access to the requested documents, such as kites he drafted, as well as the grievance package he was given a copy of…" (ECF No. 49, PageID.347). Notwithstanding his objections, Baker indicated, "to the extent the documents requested are not protected by attorney-client privilege, [Williams] will be provided with five pages of records related to this request upon receipt of payment of copying fees in the amount of $1.25 ($0.25 per page for four [sic] pages)." (ECF No. 49, PageID.347).

Williams in his complaint argues that having to pay to obtain the documents he is requesting "is a violation of my in forma pauperis…" (ECF No. 49, PageID.339). However, as Baker correctly notes (ECF No. 51, PageID.378), Williams must pay for his own discovery because, "while a prisoner's *in forma pauperis* status entitles him to request service by the Marshal without payment of service fees, he remains responsible for any costs associated with production of the requested documents because 'there is no

---

[4] Williams has not raised allegations of a pay disparity, and thus Baker need not provide "pay rates" as Williams requested.

constitutional or statutory requirement that the government or Defendant pay for an indigent prisoner's discovery efforts.'" *Thomas v. Fox*, No. 1:22-CV-1038, 2023 WL 12092446, at *1 (W.D. Mich. Nov. 1, 2023) (quoting *Smith v. Yarrow*, 78 F. App'x 529, 544 (6th Cir. 2003)).  Therefore, if Williams wishes to obtain the documents requested, he must mail $1.25 to defense counsel, and upon its receipt the documents shall be produced to Williams.

### e.  Requests to Produce #5 and #14

Williams' RTP #5 asks Baker to "produce documents which references to events that the defendant recorded in the east quartermaster logbooks dealing with [Williams], for the month of May." (ECF No. 49, PageID.347). According to Williams, "Each area in the facility has a logbook and it is used to keep information of the things that [have] happen[ed] in that area. " (ECF No. 55, PageID.420). Baker in his objection argues the request is "overbroad, extremely vague, and burdensome." (ECF No. 49, PageID.347). Williams in his reply argues the scope is not vague as "[he] only worked half of the month…the defendant also started this month and so was not allowed to place {sic] any thing in it until the second week." (ECF No. 55, PageID.420).

The Court construes this as Williams requesting copies from the east quartermaster logbook from May 2023 *related to the events at issue in this case*. Construed as such, the request is not overbroad, vague, or burdensome.  Despite his objection, Baker claims he "reviewed the logbooks requested by [Williams] and there was no responsive information contained in the logbook requested." (ECF No. 51, PageID.380). Thus, while the Court finds that Williams is entitled to copies of the May 2023 east quartermaster logbook to the extent it contains references to Williams or the alleged events that precipitated this action

– and Baker shall, within **21 days** produce any such documents that exist – obviously, if no such documents exist, there will be nothing for Baker to produce.

A similar analysis applies to Williams' RTP #14, which asks Baker to "produce a copy of the following documents of these dates (5-16-23, 5- 19-23 and 5-22-23) from the east quartermaster logbook." (ECF No. 49, PageID.352). Baker provides the same response here as he did with  RTP #5. Again, to the extent such documents exist and contain references to Williams or the alleged events that precipitated this action, Baker shall produce them within **21 days**.  If no such documents exist, there will be nothing for Baker to produce.

### f.  Interrogatory #6

Williams' Interrogatory #6 asks Baker to "provide the number the plaintiff was on the job pool, for the 24t[h] of every month starting with 5-24-23 to 6-24-24 (which should be 14), with a description of what the job pool is." (ECF No. 49, PageID.348). Williams supports this request by stating "it does help with showing that the defendant request in keeping the plaintiff from obtaining the prison detail job in the quartermaster was being upheld by the co-workers… Plus there is a little confusion [sic] in why the defendant terminated the plaintiff As the supervisor states that it was for other antics that the [Williams] did or did not do. But administration states how the [Williams] was terminated because of a change in the hours in the area that the [Williams] worked at." (ECF No. 55, PageID.421). Baker argues "there are simply no documents to produce here." (ECF No. 51, PageID.381).  Further, Baker states "it is impossible to provide information regarding the job pool as it changes daily based on transfers, reclassifications, and other factors. There is no way to look back at the job pool for any specific date." (ECF No. 49, PageID.348).

Williams has not offered any evidence to call Baker's assertions into question, so the Court will not order any relief as to this interrogatory at this time.[5]

### g. Interrogatory #7

Williams' Interrogatory #7 asks Baker to describe the race of every inmate that had a prison detail in the east quartermaster, with their detail title, the time of their detail hours, their detail assignment start date and a small description of what their job consist of doing, for and on the dates of 5-14-23 and 5-25-23." (ECF No. 49, PageID.348-349). While offering objections, Baker nevertheless answered the Interrogatory by stating, "including [Williams], there were two black inmates and three white inmates with detail assignments in the east quartermaster during the requested time period." (*Id.*, PageID.349). Williams argues "this request is something the jury needs to see, due to it being evidence that shows racial discrimination." (*Id.*, PageID.341). Further, Williams takes issue with the question only being partly answered, and claims "The question at hand ask of more details to the position (detail hour, who held what detail, the dates in which they started, Etc). But at no time were [sic] these questions answered as it was and still is in the reach of the defense." (ECF No. 55, PageID.421).

The Court finds that the response provided by Baker sufficiently answers the relevant aspects of Williams' Interrogatory, and Williams offers no justifiable reason for

---

[5] The Court does take issue with Baker's argument that "information that involves other prisoners would be hearsay allegations that have no probative value in this case." (ECF No. 49, PageID.348). As Williams correctly notes in his reply brief (ECF No. 55, PageID.421), Interrogatory #6 has nothing whatsoever to do with "hearsay," which is defined as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers into evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Moreover, considering Williams is alleging racial discrimination in his termination, the hiring of other inmates for the position he had held is relevant to his claim.

why the added information is relevant to his claim. Thus, no further response by Baker is required.

### h.   Interrogatory #9

Williams' Interrogatory #9 asks Baker to "provide the time you clocked out of work daily without overtime for the month of May [sic] in 2023?" (ECF No. 49, PageID.350). Williams' claims "This question shows how the plaintiff was one of the inmates that did work as the supervisor was present and so the claim is valid while showing how this time of the defendant leaving work is not out of the scope of this claim." (*Id.*, PageID.341). The Court construes this statement as Williams arguing that Baker's time records for May 2023 would prove whether the hours in the east quartermaster did change as claimed by Baker in the complaint. However, Baker is correct in objecting to the request as "Knowing what time Defendant Baker clocked out each day for a full month is not necessary to prove Plaintiff's claims…" (ECF No. 51, PageID.382-383). Williams has not shown how this information is relevant to his case, and the times of Baker's "clock-outs" would not necessarily establish anything about the reasons for Williams' termination, one way or another.  Thus, no additional response by Baker is required.

### i.   Interrogatory #10

Williams' Interrogatory #10 asks Baker to "state the operating procedure in the east quartermaster, which is in effect during May 2023 at Central Michigan Corr. Fac. for keeping records of the events that happen in that area?" (ECF No. 49, PageID.350). This request is similar to Williams' RTP #'s 1 and 10, *see supra* at 3-5. As mentioned previously, Williams now states, "I have also found it to be true, that I am able to obtain operating procedures (OP) of another facility while I am at my current facility." Thus,

Williams has not shown that Court intervention is required as to this request.

### j.   Interrogatory #11

Williams Interrogatory #11 asks Baker to "provide the facilities, the duties, the nature, the extent, the powers and dates in which you have worked inside of M.D.O.C. as an employee?" (ECF No. 49, PageID.351). Baker responds to the request by stating "During the time period in the subject complaint Defendant was the quartermaster/storekeeper." (*Id.*). Williams claims, "the request is evidence that is needed to be placed on the record for the jury to see why the defendant has moved from one location to another inside the M.D.O.C." (ECF No. 55, PageID.422). The Court finds the answer given by Baker is sufficient. Baker correctly argues that "Any jobs [he] may have held with the MDOC outside of the relevant time period are irrelevant . . ." (ECF No. 51, PageID.384). The scope of the case centers around the events that occurred in the east quartermaster area of STF when Baker was the quartermaster/storekeeper.  Williams has not shown the relevance of Baker's work history at STF or other MDOC locations, and even if Baker held multiple jobs within the MDOC, that would not prove anything as to "why" he made any of those moves. As a result, no further response by Baker is required.

### Conclusion

For all of the above reasons, **IT IS ORDERED** that Williams' motion to compel **(ECF No. 49)** is **GRANTED IN PART AND DENIED IN PART** as stated above.

Dated: July 1, 2026                             s/ David R. Grand
Ann Arbor, Michigan                        DAVID R. GRAND
                                                      United States Magistrate Judge

### **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

The parties' attention is drawn to Fed. R. Civ. P. 72(a), which provides a period of

fourteen (14) days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S. C. §636(b)(1).

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 1, 2026.

s/ Eddrey O. Butts
EDDREY O. BUTTS
Case Manager

13